28  201
35  525

MARTHA ALLENDORPH, APPELLEE, V. DAVID OGDEN ET AL., APPELLANTS.

[FILED DECEMBER 17, 1889.]

1. **Negotiable Instruments**: Loss. M. A., being the owner of two notes secured by mortgage upon land in Nebraska, which notes were past due, and had been endorsed in blank by the executor of her father's will, through which she obtained the notes, sent them by mail to a bank in Illinois for presentation at the place of payment. The notes were received at the bank, and presented for payment, but not paid, and were lost either at the bank or in being returned by mail to M. A. at Lawrence, Kansas. In an action by M. A. upon said notes, and to foreclose said mortgage, as lost instruments, proof of the loss of said instruments, as well as negative proof that they were never sold or disposed of by or under the authority of the bank, being satisfactory and convincing, *held*, that the decree of the district court for the foreclosure of said mortgage and sale of the mortgaged premises for the payment of said notes be affirmed.

2. ———: INTEREST. At the date of the notes a contract to pay a rate not exceeding 12 per cent interest for the loan or forbearance of money, and the notes sued on calling for twelve per cent interest until paid, the decree providing for the payment of interest at that rate until paid, upheld.

APPEAL from the district court for Johnson county. Heard below before BROADY, J.

L. C. Chapman, for appellant Cheney, cited: Esty v. Snyder, 41 Ill., 363 ; McIlvoy v. Cochran, 3 Litt. (Ky.), 454; Cook v. Larkin, 19 La. Ann., 507; Pintard v. Tackington, 10 Johns. (N. Y.), 104* ; Baker v. Dumbolton, Id., 240*.

R. W. Sabin, for appellee, cited: Hale v. Christy, 8 Neb., 268; Stevenson v. Craig, 12 Id., 464 ; Cheney v. Cooper, 14 Id., 415; Herdman v. Marshall, 17 Id., 259.

COBB, J.

This cause was appealed from the decision of the district court of Johnson county.

On July 21, 1887, the plaintiff filed a petition in the court below stating her cause of action to be:

That on August 14, 1876, the defendant, David Ogden, made and delivered to one Jacob K. Stelle, now deceased, his six promissory notes of that date.   One note for $450 due five years after date, and five interest notes for $45 each, due in one, two, three, four, and five years after date.

That on the same date defendant Ogden made and delivered to said Stelle a mortgage on S. W. ¼ N. E. ¼, and S. E. ¼ N. W. ¼, and W. ½ S. E. ¼ N. E. ¼, 5, 6, 10, in Johnson county, to secure said six notes.   Said mortgage provided for an attorney's fee of ten per cent on recovery. Said mortgage was recorded on August 22, 1876, a copy thereof attached to petition as Exhibit A.

Defendant has paid four interest notes due in 1877–8–9, and 1880.

No proceedings at law have been had.   On March 7, 1878, J. K. Stelle died.   The plaintiff is his daughter and heir at law, and by will of deceased the plaintiff became

the owner of the notes and mortgage sued on, the executor having delivered same to the plaintiff; she has ever since been owner thereof.

That on or about September 1, 1881, after they became due, the note for $450, and last interest note for $45, with the mortgage, was lost, and plaintiff has been unable to gain possession of them or find them since, although she has made diligent search at the place where they were last known to be; that the same have never been paid.

That Rebecca Nelson, Rosey Farlow, Gustave H. Straube, and Prentiss D. Cheney claim to have an interest in said land, but such interest is subject to the mortgage now sued on.   Plaintiff prays that the mortgage may be foreclosed, land sold, proceeds applied to payment of indebtedness, costs, and attorney's fees.

On November 23, 1887, B. F. Perkins, guardian *ad litem*, filed an answer for Rosey Farlow and —— Farlow, denying all allegations that can prejudice minors.

On November 25, 1887, defendant P. D. Cheney filed an answer denying each and every allegation in petition.

On May 21, 1888, defendant G. H. Straube filed an amended answer denying each and every allegation in petition; that the notes described were transferred to one Richardson; that plaintiff is not owner thereof.

On November 26, 1887 the plaintiff filed her reply to the answer of defendant Cheney, denying each and every allegation therein.

On November 15, 1888, the plaintiff filed her reply to the answer of defendant Straube, denying each and every allegation therein.

At the November term, 1888, a trial was had to the court, a jury being waived, and on November 16 the court found for the plaintiff, and further found that the defendant Ogden executed the mortgage as set forth; that said mortgage was duly recorded; that the plaintiff became the owner thereof through the will of her deceased father,

and is the legal owner thereof; and that there is due the plaintiff thereon the sum of $925.65 ; that said mortgage be foreclosed and the premises sold to pay the amount thereof, together with the sum of $90 attorney's fee, and that $10 be allowed the guardian *ad litem* of the minor defendants, to which the defendants except and assign for errors :

1. That the court erred in finding for the plaintiff, and that the plaintiff is the owner of the mortgage debt sued on.

2. In sustaining the cause of action that the notes and mortgage sued on are lost, and decreeing a foreclosure of the mortgage.

On the trial in the court below it was proved by the testimony of Moore C. Stelle, of Jerseyville, Illinois, that he and his mother were the executors of the will and estate of his father, Jacob K. Stelle, who died March 7, 1878; that the estate was settled under the will; that his sister, the plaintiff, became the owner of the notes and mortgage in controversy under the will; that she selected the notes and mortgage, and took possession of them as a part of her share, in 1879; that he endorsed the notes, and that she receipted to him for them.

The plaintiff's deposition stated that she was forty-two years of age, that she resided in Lawrence, Kansas, and is the daughter of Jacob K. Stelle, late of Jerseyville, Illinois, deceased; that she is the owner of the claim in controversy in this suit; that she came by the notes and mortgage from her father's estate; that he bequeathed to her $4,000, by his will, to be paid to her in securities which he owned at his death; that the notes sued on were amongst those she selected and received from the executor of the estate, who sent to her at Lawrence, Kansas, a list of the notes which she selected from to make up her $4,000; that in May 1879, her brother wrote to her that he would send the notes which she had selected, and shortly afterwards she received from him the notes, and among others the Ogden notes, the

third and fourth of which, of $45 each, due August 14, 1879, and 1880, have been paid; the principal note of $450 and the last interest note of $45, are unpaid; that she turned them over to her husband, C. W. Allendorph, who managed her business, for keeping, and has not seen them since, and does not, of her own knowledge, know what became of them or of the mortgage security which she also received and delivered to her husband at the same time. These notes were (1) of $450 and (2) interest note of $45, signed by Daniel Ogden and payable to J. K. Stelle; that her recollection does not enable her to state the exact date of the notes, or just when they became due, but from data in her possession the notes were dated about August 14, 1876, and bore twelve per cent interest after maturity; that neither of them has ever been paid, and there is still due the principal and interest of both from August 14, 1881, the date she thinks they matured; that the notes and mortgage are lost; that she had her husband mail them for collection to the First National Bank of Jerseyville, Illinois, a short time after they were due, and has not seen them since; that she has had her husband write to the bank for them, but has not been able to trace or find either the notes or mortgage by this means, and refers to letters from the officers of the bank, and from P. D. Cheney, attached to her deposition.

C. W. Allendorph's deposition stated that he resided at Lawrence, Kansas, and was the husband of the plaintiff; that by her direction, ever since their marriage, he has attended to her business affairs; that she was the owner of the claim involved in this suit; that she was such owner by and through the will of her father, Jacob K. Stelle, of Jerseyville, Illinois; that under the terms of said will she selected the notes and mortgage sued upon as a part of her share of his estate, and that they were delivered to her by the executor May 25, 1879; that the third and fourth interest notes, of $45 each, of David Ogden, due August 14,

1879, and 1880, respectively, have been paid — and were paid shortly after coming due; that the fifth interest note of $45, due August 14, 1881, and the principal note of $450, due at the same date, are still unpaid, and that he does not know where those notes now are, but can tell what he did with them — that both notes and the mortgage were sent by deponent, in a registered letter, August 22, 1881, to the First National Bank at Jerseyville, Illinois, for collection; that deponent has the returned registration receipt for the letter enclosing them; that owing to the absence of Mr. Cheney at the seashore the notes were not collected by the bank; that sometime afterwards the bank undertook to return them to deponent through the mails, and, as near as can now be ascertained, the two notes and mortgage were lost in the mails between Jerseyville, Illinois, and Lawrence, Kansas; that deponent has never seen the notes or mortgage since he mailed them to the bank on August, 22, 1881; that he has endeavored to find said notes and mortgage by letters addressed to the bank, and to P. D. Cheney at Jerseyville, and to the executor of Jacob K. Stelle, to investigate the matter of their loss, but without success. The letters in reply are produced and attached to the deponent's deposition.

Edward Cross's deposition stated that he was born and raised, and has always lived, in Jerseyville, Illinois; that he has been cashier of the First National bank since 1884; that in August, 1881, he was either vice president or assistant cashier; that on August 26, of that year, the bank received from C. W. Allendorph, for collection, two notes signed by David Ogden, dated August 14, 1876, due on August 14, 1881, one for $450, the other for $45, drawing interest after maturity, but deponent does not remember at what rate; his recollection is that they were returned about January 1, 1882, or 1883, to Allendorph at Lawrence, Kansas; deponent has no other knowledge or recollection than that stated; that it was a part of his duties to look

after collections during the time the notes were in the bank;
that he has examined carefully for these notes, and has not
been able to find them in the bank, and has searched dili-
gently for them wherever he thought they could be; that
deponent was cashier, and A. W. Cross was president of
the bank on October 13, 1885; that they had charge of the
collections and of the affairs, making loans and discounts,
etc., at the date of August 13, 1885, and that no other per-
son at that date, connected with the bank, had authority to
make sales of notes or securities, or to make loans or dis-
counts of the funds or property of the bank than A. W.
Cross and deponent, and that deponent was personally pres-
ent at the bank attending to his duties and its business on
said day, and that deponent is not acquainted with, nor has
he ever seen or known of a man named A. Richardson, of
New York city, who claims to be the present owner of the
notes and mortgage in controversy, and that, to his knowl-
edge at that date of the affairs and transactions of the bank,
the bank did not, on October 13, 1885, nor at any other
time, sell the said notes and mortgage, or either of them, to
the said A. Richardson, and that the bank never had any
transaction in relation to the same at that time, or at any
other time, with A. Richardson; that the deponent only
within the last six months heard of the existence of said
Richardson, and had read his deposition, in which he claims
to have paid to said bank $560 on the 13th of October, 1885,
for the notes and mortgage in controversy, and deponent
declares that said deposition is false, and that said bank
neither at that, nor any other time, had any authority to sell
the said notes and mortgage or either of them, and that the
only authority of the bank was to collect the money and
remit it to C. W. Allendorph.

A. W. Cross's deposition states that he is president of the
First National Bank at Jerseyville, Illinois, and has been
since 1876, corroborating substantially the testimony of
Edward Cross, the cashier, as to the notes and mortgage

in controversy; introducing with his deposition a copy of
his letter to C. W. Allendorph, Lawrence, Kansas, dated
February 12, 1886, acknowledging the receipt of the notes
August 26, 1881, for presentation to P. D. Cheney for
payment; that they were so presented and were not paid,
and were retained for instructions, and that, as he supposed,
Allendorph had adjusted them; after a long time they re-
turned them, as they did as to all other stale collections.
Deponent stated that in addition to his brother, Edward
Cross, there was with him in the bank on the 13th of Oc-
tober, 1885, Thomas J. Nesbitt as bank clerk, who had
access to the funds and negotiable paper of the bank, and
made collections from business men on account of the bank,
under direction of deponent.

The deposition of A. Richardson was introduced in evi-
dence on the part of defendant Cheney, and stated that
the deponent did not know the plaintiff, nor any of the de-
fendants, except Prentiss D. Cheney, whom he had known
since the year 1867 or '8; that he knows nothing of this
suit, except what he has learned from said Cheney; that
he, himself, is the owner and holder of two notes given by
David Ogden to Jacob K. Stelle, one for $450 and the
other for $45, both dated August 14, 1876, and both due
five years after date, secured by a mortgage on 100 acres of
land in Johnson county, Nebraska; that he then produced
the same to the notary public to be copied into his deposi-
tion; that he purchased the notes and mortgage of the First
National Bank of Jerseyville, Illinois, on October 13, 1885,
and paid for the same $560 in cash, and has owned them
ever since, and that no other person has any interest in
their ownership, and that they do not belong to plaintiff,
and were indorsed in blank by the executor of J. K. Stelle,
deceased; that he learned from Prentiss D. Cheney that
the notes were right and correct in every respect, and was
satisfied as to the security from personal knowledge of the
land in Johnson county, Nebraska.

This evidence fully establishes the fact, and without contradiction, that the two notes in controversy were set over to the plaintiff as a part of her portion of her deceased father's estate, and that they came into her possession, and became absolutely her property and remained so until after their maturity; that shortly afterwards, through the agency of her husband, the notes were forwarded to the First National Bank of Jerseyville, Illinois; that by the president of the bank they were taken to the office of Prentiss D. Cheney, in Jerseyville, at which office they were made payable, for presentation and payment, but were not paid. Thus far there is no conflict of the testimony, nor doubt as to the facts. The officers of the bank, testifying from their books, and their customary method of business, reach the conclusion that after retaining the notes for some time in their possession without being paid, at the close of the year, and possibly at the close of the second year, they returned them by mail, pursuant to the invariable custom of incorporated banks, to rid themselves of stale and uncollectible paper at stated periods.

It is clearly proven that neither the plaintiff nor her husband sold nor authorized the sale or transfer of the notes to a third party; and it is equally proven that they were not sold or transferred under any authority of the bank or by any officer of it. But upon that point there is a direct conflict of testimony, as has been seen. The trial court doubtless accepted the evidence of the president and cashier of the bank as truthful, and necessarily rejected the deposition of the witness, Richardson, as apocryphal. The preponderance in favor of known witnesses and their consistent evidence over that of an interested and uncorroborated witness would seem to drive all doubt from the mind that should hesitate as to the two contradictory conclusions. It is not my purpose to analyze Richardson's deposition, but I think had it been true that he would not have failed to testify as to the name and place of the party who repre-

14

sented the bank in the sale of the notes to him.    These notes being in the bank without authority of sale or transfer, and not having been found in the bank after the most thorough search and inquiry, and after the lapse of seven or eight years without having been presented for collection, I think it a legal and reasonable presumption that they are lost, and were probably lost in the mails.    It would seem that all of the statements of the deposition of Richardson were disbelieved and rejected by the district court. Consistently with an acknowledged principle of evidence, having rejected as false the statement that he bought the notes on October 13, 1885, of the Jerseyville Bank, the court might also reject the statement that he had the notes in his possession at No. 303 East Sixty-fifth street, New York city.

Upon such being the case, the right of the plaintiff to recover as upon lost instruments is established.    The defendant, by his bill of exceptions, submits as a proposition that the evidence discloses that the notes and mortgage are not lost, but were sold to A. Richardson on October 13, 1885, by some one who had possession of them.    It cannot be said that this fact is *disclosed* by the evidence, while it is admitted that the witness Richardson swears to it, and also swears that they were sold him by the Jerseyville Bank, which testimony was discredited and is not believed to be entitled to respect.

I have examined the several propositions of law as well as the various authorities cited by the counsel for the appellant, and do not think any of them analogous to the case at bar; or that the case demands a further examination of them.

At the date of the notes a contract to pay twelve per cent interest per annum was legal; and in the case of *Hager v. Blake*, 16 Neb., 12, in 1884, it was held that "the rate of interest agreed upon in a written contract, not in excess of that allowed by statute, continues until payment."

The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.